383 F.2d 879
 DIXIE PLANTATION COMPANY, Inc., Plaintiff-Appellant,
v.
J. R. DUNCAN, Stratton Stinnett, and Roy C. Galloway,
Members of the ReviewCommittee, and the Review
Committee, Composed of J. R. Duncan,
StrattonStinnett, and Roy C.
Galloway,
Defendants-
Appellees.
 No. 17071.
 United States Court of Appeals Sixth Circuit.
 Sept. 11, 1967.
 
 Stanley M. Saunier, Jr., Lexington, Ky. (William B. Gess, Jack F. Mattingly, Gess, Mattingly, Saunier & Atchison, Lexington, Ky., on the brief), for appellant.
 Robert C. McDiarmid, Atty., Dept. of Justice, Washington, D.C. (J. William Doolittle, Acting Asst. Atty. Gen., Alan S. Rosenthal, Dept. of Justice, Washington, D.C., George I. Cline, U.S. Atty., Lexington, Ky., on the brief), for appellees.
 Before PHILLIPS and McCREE, Circuit Judges, and KENT, District Judge.*
 McCREE, Circuit Judge.
 
 
 1
 This is an appeal by Dixie Plantation Company from the judgment of the District Court affirming, with slight modification,[1] the decision of the defendant Review Committee upholding a 1965 burley tobacco allotment by the Fayette County Agricultural Stabilization and Conservation (ASC) Committee of 1.37 acres for Dixie's farm. Dixie contends the allotment should have been 8.44 acres.
 
 
 2
 The establishment of the 1.37 acre allotment by the ASC Committee was the final step in a complicated series of events beginning in September 1960, when Eastland Park, Inc. conveyed to S & M Land Company (a company directed by the same individuals as plaintiff Dixie) a farm on Hume Road (hereinafter 'Hume farm') in Fayette County, Kentucky. In 1960 and 1961, S & M conveyed portions of the Hume farm to parties not involved in this litigation. By complying with the relevant regulations of the Department of Agriculture,[2] S & M was able to utilize the burley tobacco allotment which had previously applied to the entire Hume farm for the part of the Hume farm which it retained. On March 12, 1962, S & M purchased farmland on DeLong Pike (hereinafter 'DeLong farm') and combined this land with its retained portion of the Hume farm as a single farming unit. On March 13, 1962, S & M conveyed the retained portion of the Hume farm to Dixie for non-agricultural purposes, applying the Hume farm allotment to the DeLong farm. On March 15, 1962 S & M conveyed the DeLong farm to Davis and McEachin, along with its allotments, and this farm was combined with other Davis and McEachin holdings. Thus, in March, 1962, Dixie owned a portion of the Hume farm with no allotment, and Davis and McEachin owned the DeLong farm with the allotment previously applicable to the entire Hume farm.
 
 
 3
 In April, 1964, the Kentucky State ASC Committee determined that the transfer of the Hume farm allotment as just described was in violation of Department of Agriculture regulations, and the combination of the Hume farm allotment with the other Davis and McEachin holdings was dissolved. The county ASC committee returned the Hume farm allotment to that farm, and simultaneously retired the allotment because S & M, upon conveying the Hume farm to Dixie in 1962, had filed an Amendment 10[3] agreement stating that the land was to be used for non-agricultural purposes. The Department of Agriculture, in a directive of February 5, 1965, informed the county committee that this Amendment 10 agreement was void because of the subsequent dissolution of the combination of the Hume farm allotment with the Davis and McEachin holdings. The county committee was therefore required to restore the Hume farm allotment, taking into account the changes which had taken place in the use of the land between 1962 and 1965. The committee determined the proper allotment to be 1.37 acres, the figure disputed here by Dixie.
 
 
 4
 The allotment applicable to the Hume farm in 1962, when the farm consisted of 152.2 acres of farmland and 151.2 acres of cropland, had been 10.42 acres. The county committee determined that on March 27, 1962, the Kentucky Highway Department had acquired 37.8 acres of farmland and 37.6 acres of cropland by eminent domain, and that, since Dixie had not requested that the allotment for this land be returned to it within the three years required by regulation,[4] 2.59 acres of allotment would have to be dropped, leaving an allotment of 7.83 acres. The committee further determined that in 1964, 37.08 acres of farmland with 36.79 acres of cropland had been conveyed for non-agricultural purposes, and that this conveyance of more than 25 per cent of the cropland of the farm required the dropping of an additional 2.57 acres of allotment.[5] Because of changes in state quotas, the 1964 allotment of the Hume farm prior to the dropping of this acreage would have been reduced to 7.05 acres; hence, the dropping of 2.57 acres resulted in an allotment of 4.48 acres. The committee finally determined by personal inspection that an additional 42.51 acres of cropland had been removed from production in 1965, necessitating the dropping of an additional 2.66 acres of allotment. Reduction in the state quota would have given Dixie an allotment of 4.03 acres prior to the dropping of this acreage; hence, the dropping of 2.66 acres resulted in the disputed 1.37 acre allotment. Dixie contends that the three determinations by the county committee were improper.
 
 
 5
 The decision of the county committee was adopted by the review committee and affirmed by the District Court, which made findings of fact and conclusions of law. (The review committee, in addition to adopting the acreage determination of the county committee, had refused Dixie's request to combine the Hume farm with property known as the Writt tract which had been acquired by Dixie.) Two questions are properly before this court: (1) Are the findings of the review committee supported by substantial evidence? (2) Did the District Court properly refuse to remand the case to the review committee for the taking of additional evidence? We answer both questions affirmatively.
 
 
 6
 One of Dixie's claims of error is that the eminent domain proceedings occurred later than the date found by the county committee. Dixie raised no objection at the hearing before the review committee to the March 27, 1962, date, and indeed waived its right to a continuance so that it could obtain additional information. We cannot say that there was no evidence to support the finding of the review committee that the land was taken on March 27, 1962, and we therefore cannot disturb its conclusion that no timely request had been made to regain the allotment applicable to the land taken by the state.[6] With regard to the acreage dropped in 1964 and 1965, there is ample evidence to support the findings of the review committee that certain portions of the farm were no longer utilized for agricultural production. Substantial evidence also supports the finding that no request had been made to the county committee to combine the Writt tract with Dixie's other holding, and it was therefore proper for the review committee to refuse to effect this combination.
 
 
 7
 7 U.S.C. 1366 sets forth the standards to be applied by the District Court in deciding a request for remand for additional evidence. The evidence must be material and reasonable grounds for failure to have adduced it before the review committee must be found. Here, the District Court correctly found that neither test had been met. Dixie sought a remand so that it might introduce evidence, principally a deed, indicating that the eminent domain proceedings found to have taken place in March, 1962 actually took place at a later date. As noted previously, Dixie, at the time of the review committee hearing, waived its right to a continuance so that it might obtain additional information. Moreover, if the eminent domain proceedings took place in March, 1963-- the date of the deed-- Dixie would be in no better position to regain the acreage dropped as a result of those proceedings. A regulation which became effective July 27, 1962,[7] prohibits a person from becoming a 'displaced owner' entitled to regain allotments lost as a result of eminent domain proceedings if he acquired the land subject to pending condemnation or if he owned the land for less than twelve months prior to the condemnation and no determination had been made by the Department of Agriculture that he had acquired the land for agricultural purposes. If, as Dixie now contends, the eminent domain proceedings took place at some time after July, 1962, then this regulation would effectively bar Dixie's claim. Dixie admitted at the hearing that it was aware of the pending condemnation before purchasing the land. No finding had been made by the Department of Agriculture that Dixie had purchased the land for agricultural purposes; indeed, the District Court found to the contrary.
 
 
 8
 The judgment of the District Court is affirmed.
 
 
 
 *
 Honorable W. Wallace Kent, Chief Judge, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 The District Court, although agreeing with the Review Committee that 1.37 acres was a proper allotment for 1965, found that Dixie had been notified on April 5, 1965, that the allotment would be 3.29 acres, and that Dixie had planted its crop prior to being notified on May 24, 1965, that a revised allotment of 1.37 acres had been established. The court therefore held that the 3.29 acre allotment should be used for 1965
 
 
 [2]
 7 C.F.R. 719.6(b)(1)
 
 
 [3]
 7 C.F.R. 719.6(b)(1)
 
 
 [4]
 7 C.F.R. 719.12(f)(1)
 
 
 [5]
 7 C.F.R. 719.6(b)(2)(i)
 
 
 [6]
 Dixie, both in its brief and on oral argument, contended that the District Court erred in its first finding of fact, where it was found that 'a 1965 burley tobacco allotment of 2.59 acres' was properly dropped because of the 1962 eminent domain proceedings. The government concedes that a 2.59 acre allotment in 1962 was equivalent to a 2.1 acre allotment in 1965, and that the statement of the District Court was therefore erroneous. In its fourth finding of fact, however, the District Court correctly stated the final allotment to be 1.37 acres; hence the erroneous statement in the first finding resulted in no prejudice to Dixie
 
 
 [7]
 Now 7 C.F.R. 719.11(j)